Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
Jared M. Ahern, OSB No. 221919
jahern@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201-3412
Tele: (503) 224-3092
Fax:  (503) 224-3176

*Attorneys for Plaintiff*
*Umatilla Electric Cooperative*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| UMATILLA ELECTRIC COOPERATIVE, an Oregon Electric Cooperative organized under ORS Chapter 62, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHLAND GRID STRUCTURES, LLC, a Louisiana limited liability company, <br><br> Defendant. | Case No. <br><br> **DECLARATION OF JARED M. AHERN IN SUPPORT OF PLAINTIFF'S PETITION FOR ORDER TO CONFIRM ARBITRATION AWARD** |

I, Jared M. Ahern, hereby declare:

1.      I am a citizen of the United States of America, am over the age of 18 years, and am competent to make this declaration. I have personal knowledge of the matters testified herein. I am an attorney at Cable Huston LLP, which represents Umatilla Electric Cooperative ("UEC") in this action and which represented it in the underlying arbitration proceeding. I was personally involved in representing UEC in the underlying

Page 1 – DECLARATION OF JARED M. AHERN

arbitration. I submit this declaration in support of UEC's Petition for Order to Confirm Arbitration Award. A true and correct copy of the Award that UEC seeks to confirm is attached hereto as Exhibit 1.

2.      On or about February 7, 2023, UEC, defendant Southland Grid Structures, LLC ("Grid") and two other entities that are not parties to this case entered into an agreement to arbitrate certain claims relating to UEC's construction of high voltage transmission lines. A true and correct copy of this agreement is attached hereto as Exhibit 2.

3.      The parties proceeded to arbitration before the Arbitration Service of Portland ("ASP"), with Martha Hodgkinson serving as arbitrator. A true and correct copy of the letter from ASP appointing Ms. Hodgkinson as arbitrator, dated May 3, 2023, is attached hereto as Exhibit 3.

4.      On or about September 30, 2024, UEC, Grid, and one other party to the arbitration that is not a party here, entered into a settlement agreement which required, among other things, that Grid pay UEC $4,000,000 through a series of installment payments. A true and correct copy of this settlement agreement is attached hereto as Exhibit 4.

5.      In the settlement agreement, UEC and Grid agreed to the entry of the stipulated arbitration Award (Exhibit 1 hereto), and agreed in the settlement agreement and the Award itself that UEC would only submit it to a Court and request entry of judgment on the Award if Grid defaulted on its payment obligations under the settlement agreement.

6.      On or about April 30, 2025, UEC and Grid agreed to an amendment to the settlement agreement which modified the payment schedule by which Grid would pay UEC the required amounts under the settlement agreement. A true and correct copy of this Amendment is attached hereto as Exhibit 5.

/ / /

Page 2 – DECLARATION OF JARED M. AHERN

7.       Pursuant to the Amendment, Grid's final settlement payment to UEC in the amount of $600,000 was due on or before April 30, 2026.

8.       Grid did not make this $600,000 payment. On May 5, 2026, I sent, on behalf of UEC, a notice of default to Grid via its attorney. Pursuant to paragraph 2.B of the settlement agreement, Grid had ten business days to cure its default. A true and correct copy of this notice of default is attached hereto as Exhibit 6. Grid did not cure its default within ten business days of May 5, 2026.

9.       On May 26, 2026, Grid made a $100,000 payment to UEC. It is still in default in the amount of $500,000, in addition to interest at the agreed upon rate of nine percent per annum.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED on May 28, 2026.

s/  Jared M. Ahern
Jared M. Ahern, OSB No. 221919

Page 3 – DECLARATION OF JARED M. AHERN

BEFORE THE

ARBITRATION SERVICE OF PORTLAND

| | |
|---|---|
| UMATILLA ELECTRIC COOPERATIVE, an Oregon Electric Cooperative organized under ORS Chapter 62,<br><br>      Claimant,<br><br>    v.<br><br>PACIFIC STEEL STRUCTURES, LLC, a Washington limited liability company; H.W. METAL PRODUCTS, INC., an Oregon corporation; and SOUTHLAND GRID STRUCTURES, LLC, a Louisiana limited liability company,<br><br>      Respondents. | ASP No. 230317<br><br>**STIPULATED ARBITRATION AWARD** |
| PACIFIC STEEL STRUCTURES, LLC, a Washington limited liability company,<br><br>      Claimant,<br><br>    v.<br><br>UMATILLA ELECTRIC COOPERATIVE, assumed business name of Umatilla Electric Cooperative Association, an Oregon cooperative,<br><br>      Respondent. | |

**Exhibit 1**
**Page 1 of 4**

THIS MATTER comes before arbitrator Martha Hodgkinson upon the stipulation of Claimant Umatilla Electric Cooperative ("UEC") on the one hand, and Respondent Southland Grid Structures, LLC ("Grid") (collectively the "Parties") on the other. It appearing that the Parties have stipulated to entry of this award, IT IS HEREBY ORDERED AS FOLLOWS:

An arbitration award is hereby entered in favor of UEC and against Grid in the amount of $4,000,000 (four million dollars).

All Parties shall bear their own costs and fees incurred to date in the arbitration proceedings.

This award shall be enforceable via judgment in a court of competent jurisdiction, and Grid stipulates and agrees not to contest any request by UEC to confirm this award as a judgment in any court of competent jurisdiction; provided, however, that such award is entered and judgment is confirmed per the terms of the parties' Confidential Settlement Agreement and Release.  Any amount already paid under the Confidential Settlement Agreement and Release shall be credited against any judgment entered pursuant to this award.

Upon a default under the terms of the Confidential Settlement Agreement and Release, this award shall accrue interest at the rate of 9 percent per annum. Any judgment based on this award shall accrue interest at the rate of 9 percent per annum from the time such judgment is entered. UEC shall be entitled to its reasonable attorney's fees and costs incurred enforcing this award or any judgment on this award.

## MONEY AWARD

A.    Judgment Creditor:

Umatilla Electric Cooperative
750 West Elm Avenue
Hermiston, OR 97838

B.    Judgment Creditor's Lawyer:

Tom Grim, OSB No. 882182
Casey Nokes, OSB No. 076641
Jared M. Ahern, OSB No. 221919
tgrim@cablehuston.com
cnokes@cablehuston.com
jahern@cablehuston.com

**Exhibit 1**
**Page 2 of 4**

|   | | Cable Huston LLP |
|---|---|---|
| | | 1455 SW Broadway, Suite 1500 |
| | | Portland, OR 97201-3412 |
| | | Telephone: (503) 224-3092 |

C.     Judgment Debtor:     Southland Grid Structures, LLC
13040 Foulks Ln
Amite City, LA 70422
TAX ID No.: 83-2879614

D.     Judgment Debtor's Lawyer:     Jan D. Sokol
Grant Margeson
David J. Guild II
SOKOL LARKIN
4380 S Macadam Avenue, Suite 530
Portland OR 97239
Telephone: (503) 221-0699
jdsokol@sokol-larkin.com
gmargeson@sokol-larkin.com
dguild@sokol-larkin.com

E.     Person or Public Body Other than Judgment Creditor's Attorney Entitled to Any Portion of Judgment:     None

F.     Award Amount:     **$4,000,000**

G.     Prejudgment Interest:     N/A

H.     Post-judgment Interest:     9 percent per annum

I.     Costs and attorney's fees:     None

**IT IS SO ORDERED**

_____
Martha Hodgkinson
Arbitrator

**Exhibit 1**
**Page 3 of 4**

**IT IS SO STIPULATED**

DATED: October 9, 2024.

CABLE HUSTON LLP

s/Casey M. Nokes

G. Kevin Kiely, OSB No. 833950
gkkiely@cablehuston.com
Thomas M. Grim, OSB No. 882182
tgrim@cablehuston.com
Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
Jared M. Ahern, OSB No. 221919
jahern@cablehuston.com
Jon P. Harlan, OSB No. 214708
jharlan@cablehuston.com
1455 SW Broadway, Suite 1500
Portland, Oregon 97201

*Attorneys for Claimant*
*Umatilla Electric Cooperative*

SOKOL, LARKIN, WAGNER & STORTI LLC

s/ David J. Guild II

Jan D. Sokol
Grant Margeson
David J. Guild II
SOKOL LARKIN
4380 S Macadam Avenue, Suite 530
Portland OR 97239
Telephone: (503) 221-0699
jdsokol@sokol-larkin.com
gmargeson@sokol-larkin.com
dguild@sokol-larkin.com

*Attorneys for Respondent Southland Grid*
*Structures, LLC*

**Exhibit 1**
**Page 4 of 4**

## ARBITRATION AGREEMENT

This agreement (the "Agreement") is entered into on this 7th day of February 2023, by and between Umatilla Electric Cooperative ("UEC"); Pacific Steel Structures, LLC ("Pacific"); Southland Grid Structures, LLC ("Grid"); and H.W. Metal Products, Inc. ("H.W.") (sometimes individually a "Party" or collectively the "Parties").

## RECITALS

A. UEC contracted with Pacific for the purchase of steel poles, arms, and other related equipment UEC needed for two high voltage electricity transmission projects it is building near Boardman, Oregon. These projects are known as the Olson Road Project and the Long Walk Project (collectively, the "Projects").

B. Pacific entered into subcontracts with Grid and HW to assist Pacific in fulfilling its contractual obligations to UEC related to the Projects.

C. Disagreements arose between the Parties regarding the quality of the steel products supplied to UEC for the Olson Road Project and the Long Walk Project, as well as disagreements regarding repairs, inspections, payment, and other actions related to the steel and the Projects (the "Dispute").

D. The Dispute includes the disagreements that have arisen between the Parties prior to entering into this Agreement related to the Projects, and foreseeable related disputes that may arise between the Parties during the course of arbitration.

E. The Parties all agree to engage in binding arbitration of the Dispute.

F. The Parties desire to waive any rights they have under contract law or any other law to have the Dispute heard before a court of law or any other tribunal or dispute resolution process other than the one agreed to in this Agreement.

NOW THEREFORE, for the mutual terms, covenants and conditions contained herein, the Parties agree as follows.

## AGREEMENT

1. **Arbitration Required.** The Dispute that has arisen among the Parties related to the Long Walk Project and Olson Road Project shall be resolved by arbitration at a mutually agreed upon location in Portland, Oregon in accordance with the attached arbitration rules of Arbitration Service of Portland, Inc. ("ASP Rules"), as amended in this Agreement. If this Agreement and the ASP Rules conflict, this Agreement controls. If a location within Portland, Oregon for the arbitration cannot be agreed upon, the arbitrator shall select it. Judgment upon the award rendered pursuant to such arbitration may be entered by any federal or state court having jurisdiction thereof, as set forth in ASP Rule 36.  The Parties agree that they will endeavor to complete the arbitration by April 1, 2024.

2. **Arbitration Administration.** The Parties agree to submit the matter to ASP for administration by ASP under ASP's procedural rules except as modified herein.

118372323.3 0077615-00003

**Exhibit 2**
**Page 1 of 7**

3. **Tolling of Statutes of Limitations and Other Time-Based Defenses.** The Parties agree that, the date of the Agreement as stated above shall be deemed the date of commencement of an action for any statutory or contractual periods of limitations for any and all claims and defenses between and among the Parties.  This provision shall not revive any claim or defense if the applicable period of limitation has already run as of the date of the Agreement stated above such that the claim or defense would be time barred as of that date.

   A. Following the appointment of the arbitrator and pursuant to the schedule agreed to by the Parties and/or ordered by the arbitrator, the Parties shall file statements of their claims that meet the pleading standards required by the Oregon Rules of Civil Procedure.

4. **Appointment of Single Arbitrator.** The Dispute is to be decided by a single-arbitrator, who shall be selected utilizing the procedure in ASP Rule 5.  The costs of the arbitrator shall be split as follows: UEC: 1/3; Pacific: 1/3; Grid: 1/6; H.W. 1/6 provided, however, that the prevailing Party(ies) shall be entitled to seek recovery of their share of the costs of the arbitrator from the non-prevailing Party(ies).

5. **Rule 19 of the ASP Rules is deleted in its entirety and replaced with the following.**

   **19.  Discovery Procedures.** The scope of discovery shall be governed by the Oregon Rules of Civil Procedure except as modified herein.

   A. <u>Obtaining Discovery From Another Party.</u> By May 1, 2023, each Party shall make available for inspection its entire non-privileged file related to the Dispute, including, but not limited to, all paper and electronic documents related to the Dispute, all reasonably obtainable internal and external correspondence, including email, with any Party related to the Dispute, and any like documents. The Parties shall endeavor to agree on a protocol for discovery, including for discovery of electronically stored information, subject to the following principles:
      1. Each Party shall make paper documents available for inspection at its counsel's office or another location in Portland. Upon inspection of paper documents, each party may identify documents to be copied, scanned, printed, and/or converted to bates stamped format.  The Party requesting the reproduction shall bear its own cost, except as otherwise awarded by the arbitrator.
      2. Each party shall produce electronic documents in an acceptable native format, e.g., on an external hard-drive or through a file sharing service, in substantially the same order the documents are kept in the ordinary course of business, and as Bates stamped images. Each Party producing electronic documents shall bear the costs of production, except as otherwise awarded by the arbitrator.

      3. If either Party believes additional records are needed to prepare for arbitration, it can request leave from the arbitrator for further production, and the arbitrator shall determine whether good cause exists for the production of additional records. Neither Party may use a document in arbitration that was not produced in discovery absent good cause shown and approval of the arbitrator. This does not apply to demonstrative exhibits which shall be allowed as permitted under ORCP and applicable case law.  Neither Party may require the other Party to respond to interrogatories or requests for admission.
      4. The discovery protocol contemplated by this paragraph shall include, among other things, procedure for the parties to collaborate in the identification of the custodial and non-custodial data sources subject to collection and production, time periods for collection and production, and the methodology for searching for relevant

118372323.3 0077615-00003

**Exhibit 2**
**Page 2 of 7**

documents, including but not limited to the use of search terms, and additional detail concerning the format of production.

B. <u>Obtaining Discovery From A Non-Party (authorized by ORS 36.675).</u> Non-party discovery shall be governed by ASP Rule 19.B.

C. <u>Enforcement.</u> If the arbitrator permits discovery against a non-party, such arbitrator may issue subpoenas for the attendance of a witness and for the production of records and other evidence at a discovery proceeding and take action against a non-complying party to the extent a court could if the controversy were the subject of a civil action in Oregon.

D. <u>Protective Orders.</u> The arbitrator may issue a protective order to prevent disclosure of privileged information, confidential information, trade secrets, and other information protected from disclosure to the extent a court could if the controversy were the subject of a civil action in Oregon. (Note: ORS 36.675(6) and (7) grant authority to a court to enforce the subpoena and discovery related orders of an arbitrator.)

E. <u>Filings Relating to Discovery.</u> Notices of depositions, production and inspection requests, and objection and responses thereto, shall not be filed with the arbitrator unless a ruling on an objection or motion is required.

F. <u>Expert Discovery.</u> Expert discovery shall be as provided by the Federal Rules of Civil Procedure. The Parties agree to cooperate to develop reasonable time limitations for expert depositions.

G. <u>Close of Discovery:</u> Discovery shall close on a date to be agreed by the Parties and/or ordered by the arbitrator.

6. **Rule 20 of the ASP Rules is deleted in its entirety and replaced with the following.**

**20. Pre-Hearing Statement of Proof.** (Similar to U.T.C.R. 13.170) At least twenty-one days prior to the date of the arbitration hearing, each Party shall file with the arbitrator and serve upon all other Parties a statement containing a list of expert and non-expert witnesses whom the Party intends to call at the arbitration hearing, and a list of exhibits and documentary evidence the Party intends to use at arbitration (see Rule 22). The statement shall contain a brief description of the matters about which each witness will be called to testify, the address and telephone number of each such witness and affiant, and whether the witness will testify by video. Each Party shall provide all other parties a list including bates numbers and other identifying details of the exhibits and other documentary evidence along with its pre-hearing statement of proof. In addition to those documents presumed admissible under ASP Rule 22, all documents identified in the Parties' pre-hearing statements of proof are presumed admissible unless objected to by any Party at least seven days prior to the hearing.

A Party failing to comply with this rule or failing to comply with a discovery order may not present at the hearing a witness, exhibit, or documentary evidence required to be disclosed or made available, except with the permission of the arbitrator(s), who may consider the relief provisions in Rule 40.

7. The Parties agree to mediate their claims within ninety (90) days of the filing of the final statement of claim as set forth in paragraph 3.A above unless the Parties agree otherwise. The Parties shall seek to agree on a mediator and shall share the costs of the mediator in the same proportion for sharing the costs of the arbitrator. If the parties cannot agree on a choice

118372323.3 0077615-00003

**Exhibit 2**

**Page 3 of 7**

of a mediator, then they agree that the arbitrator may appoint one. The mediation shall take place in Portland, Oregon.

8. This Agreement shall be interpreted in accordance with and governed by the law of the State of Oregon, without giving effect to the choice-of-law rules of Oregon. This Agreement is the product of voluntary and good faith negotiation between the Parties, and the provisions of this Agreement shall not be construed against any Party on the grounds that the Party drafted the provision. The Parties agree that this Agreement is the complete and exclusive statement of agreement between the parties and supersedes all proposals and all other communications relating to the subject matter of this Agreement whether in writing or oral. If any provision of this Agreement is determined to be invalid or unenforceable, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed, and the remainder of this Agreement shall remain in full force and effect. No modification or amendment to this Agreement, nor any waiver of any rights, will be effective unless signed by each Party. The terms of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective parents, affiliates, subsidiaries, officers, directors, partners, employees, heirs, conservators, successors, devisees, and assigns.

9. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, binding on the executing Parties. Transmission of via email of a signed pdf or by e-signature software (such as DocuSign) or by facsimile shall constitute a valid signature.

**BY ENTERING THIS AGREEMENT:**

(i)     The Parties understand and agree that they are bound to arbitrate all claims, defenses, and issues related to the Dispute;

(ii)    The Parties affirm that they were given ample time to review this Agreement and that they are all represented by counsel for the purpose of their respective reviews of this Agreement;

(iii)   The Parties affirm that they have read, understand, and voluntarily accept and agree to be bound by this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement.

Umatilla Electric Cooperative

By: _____
      9C16EC1E37B4451...

Name: Robert Echenrode

Title: General Manager/CEO

Date: 2/10/2023

4 of 5

118372323.3 0077615-00003

Exhibit 2
Page 4 of 7

Pacific Steel Structures, LLC

By:_____

Name:____JARROD GOODWIN____

Title:___VP of Sales____

Date:_____2/15/23_____

Southland Grid Structures, LLC

By:_____

Name:_____

Title:_____

Date:_____

H.W. Metal Products, Inc.

By:_____

Name:_____

Title:_____

Date:_____

118372323.3 0077615-00003

**Exhibit 2**
**Page 5 of 7**

DocuSign Envelope ID: 221A72E1-6ED2-44F3-8768-399DEC96EE8D

Pacific Steel Structures, LLC

By:_____

Name:_____

Title:_____

Date:_____


Southland Grid Structures, LLC

By:_____

Name: Patrick Delaney

Title: Vice President

Date: 2/16/2023

H.W. Metal Products, Inc.

By:_____

Name:_____

Title:_____

Date:_____

118372323.3 0077615-00003

**Exhibit 2**
**Page 6 of 7**

Pacific Steel Structures, LLC

By: _____

Name: _____

Title: _____

Date: _____


Southland Grid Structures, LLC

By: _____

Name: _____

Title: _____

Date: _____

H.W. Metal Products, Inc.

By: _Joshua S. Suter_____
DocuSigned by:
0B447B11238C413...

Name: Josh Suter_____

Title: President_____

Date: 2/16/2023_____

118372323.3 0077615-00003

**Exhibit 2**
**Page 7 of 7**

# Arbitration Service
## of Portland, Inc.

**www.arbserve.com**

May 3, 2023

**NEW ADDRESS:**
**9830 SW McKenzie St**
**Portland OR 97223**
503-226-3109
aspdx@hotmail.com

Kevin A. Eike,
Administrator/Attorney

*James J. Damis/ Ret. Admin.*

via email only:

Martha J. Hodgkinson
Hodgkinson Street Mepham LLC
1620 SW Taylor, Ste 350
Portland OR 97205
503-222-1143
mjh@hs-legal.com

RE:    **Parties:  Pacific Steel Structures, LLC; Umatilla Electric Cooperative;**
**H.W. Metal Products Inc.; and Southland Grid Structures, LLC**
**ASP No. 230317**

You have been selected to arbitrate the above matter.  Attached is a copy of the Statement of Claim.  The current ASP rules are available online at www.arbserve.com.

**Conflicts of Interest Avoidance.**  I have reviewed with you the names of the parties, their attorneys, and potential witnesses which have thus far been disclosed to ASP.  You did not perceive any conflicts and will make any disclosures on your Verification of Impartiality.

**Verification of Impartiality (sign; return original to ASP with a copy to each party).**  Assuming that you still perceive no conflicts, please sign and return the attached Verification of Impartiality to ASP and provide a copy thereof to each party's attorney.

**Compensation.** You will be compensated at your regular hourly rate (but not more than  $300/hour).  The parties are required to deposit the estimated compensation with the arbitrator prior to the hearing (ASP Rule 15).

**Hearing Date (to be scheduled):**   ASP encourages the parties to work with the arbitrator to set a hearing date that allows for discovery and/or mediation to be scheduled and occur.  In the alternative, if the parties and/or the arbitrator want to request ASP to send out a blank Calendar Response form, the parties or the arbitrator shall inform ASP that the hearing should be scheduled within a specifically requested 75 day time frame.

Very truly yours,

KEVIN A. EIKE
ASP Administrator

Enclosures                                                                 230317apt.wpd

**Exhibit 3**
**Page 1 of 2**

Martha Hodgkinson
May 3, 2023 - Page 2

cc via email only:

Eric A. Grasberger
   (Atty for Pacific Steel Structures, LLC)
Stoel Rives LLP
760 SW Ninth Ave., Ste 3000
Portland OR 97205
eric.grasberger@stoel.com

Casey M. Nokes
   (Atty for Umatilla Electric Cooperative)
Cable Huston LLP
1455 SW Broadway Ste 1500
Portland OR  97201
cnokes@cablehuston.com

Abraham J. Barnett
   (Atty for H.W. Metal Products Inc.)
The Barnett Firm LLC
11501 SW Pacific Hwy Ste 201
Portland OR  97223
ajbarnett@barnettfirm.com

Jan D. Sokol
   (Atty for Southland Grid Structures, LLC)
Sokol Larkin
4380 S Macadam Ave Ste 530
Portland OR  97239
jdsokol@sokol-larkin.com

**Exhibit 3**
**Page 2 of 2**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into and effective as of September 30, 2024 (the "Effective Date") between UMATILLA ELECTRIC COOPERATIVE ASSOCIATION ("UEC"); PACIFIC STEEL STRUCTURES, LLC ("PACIFIC"); and SOUTHLAND GRID STRUCTURES, LLC ("GRID"). The signatories to this Agreement are each individually referred to as a "Party" and collectively referred to as the "Parties."

## RECITALS

A.      UEC is the owner of a high voltage electric transmission line project in Boardman, Oregon known as the Olson Road Project.

B.      On or about February 25, 2021, UEC and PACIFIC entered into a contract for galvanized steel poles and arms for the Olson Road Project (the "Olson Road Equipment" and the "Olson Road Contract").

C.      PACIFIC retained GRID to manufacture the Olson Road Equipment for the Olson Road Project (the "Olson Road Subcontract").

D.      After delivery, UEC alleged that the Olson Road Equipment contained defects, and PACIFIC and GRID dispute whether, and to what extent, there were defects.

E.      UEC contends it was damaged as a result of the alleged defects, and GRID and PACIFIC dispute not only whether there were defects, but also UEC's damages, and PACIFIC also contends that UEC is required to pay it additional sums under the Olson Road Contract. GRID contends that PACIFIC owes it additional sums under the Olson Road Subcontract and PACIFIC contends GRID owes PACIFIC for defense and indemnity under the Olson Road Subcontract. PACIFIC and GRID each dispute the other's claims.

E.      On February 7, 2023, the Parties entered into an Arbitration Agreement, wherein they agreed to arbitrate all claims and defenses arising out of the Olson Road Equipment, Olson Road Contract and the Olson Road Subcontract (the "Olson Road Claims"). The Parties, along with H.W. Metal Products, Inc. ("H.W."), also agreed to arbitrate claims relating to a separate project referred to the "Long Walk Project" which GRID was not involved with. UEC and PACIFIC have represented that the claims with respect to the Long Walk Project were previously settled pursuant to the terms of a separate settlement agreement.

F.      The Parties desire to enter into this Agreement for the purpose of settling all of the Olson Road Claims as between UEC on the one hand, and GRID and PACIFIC on the other, as well as all the Olson Road Claims between GRID on the one hand, and PACIFIC on the other.

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

1.      Incorporation of Recitals.

Exhibit 4
Page 1 of 8

All of the above recitals are not only recitals, but are also integral and material parts of this Agreement and are hereby fully incorporated into the body of this Agreement. The Parties adopt, affirm, represent, and warrant the accuracy of the above recitals.

2.      Settlement, Consideration, and Dismissal.

A.      In full and final satisfaction, settlement, and release of the Olson Road Claims, the Parties agree that GRID will pay UEC the collective sum of four million ($4,000,000) by wire transfer in accordance with wire instructions UEC will provide upon execution of this Agreement and confirmed in a telephone call between UEC and GRID prior to the first payment; the UEC individual authorized to confirm the wire instructions is Lisa McMeen with the telephone number (541) 314-6797. GRID agrees to pay $2,200,000 by no later than October 20, 2024, and to make the following additional payments on the following dates: $600,000 on or before April 22, 2025; an additional $600,000 on or before October 22, 2025; and a final $600,000 on or before April 22, 2026 (collectively the "Settlement Payments")

B.      As consideration for UEC's agreement to enter into this agreement, GRID agrees to execute and deliver to UEC, simultaneously with the execution and delivery of this Agreement, the Stipulated Award in the form attached here as Exhibit A (the "Award"), and UEC and GRID agree that they will submit the Award to the arbitrator, Martha Hodgkinson, and that UEC and GRID will request that she execute the Award. In the event GRID fails to make any of the Settlement Payments, UEC shall provide GRID written notice of such default.  Thereafter, GRID shall have ten (10) business days from the date of such notice to cure the default. Upon the happening of the default and GRID's failure to cure such default, any amounts due under the Agreement, at UEC's option, shall become immediately due and payable, and UEC may apply for judgment on the Award and revise the Award amount to the then unpaid principal balance. If a default does not occur, UEC shall not apply for judgment or execute on the Award. Commencing after a default and continuing for so long thereafter as the default shall exist, and regardless of whether or not there has been an acceleration of the payments, the unpaid principal balance shall bear interest at an annual rate of nine percent (9%).

C.      In consideration of this Agreement and the promises and releases set forth herein, the Parties agree to take appropriate action to dismiss with prejudice all the Olson Road Claims, with each party bearing its own costs and expenses, within seven (7) business days that the Agreement is last executed, provided, however, that the Parties shall not seek a dismissal until the arbitrator executes the Award.

3.      Releases – Settlement of Claims Between the Parties.

3.1     UEC Release of Claims.

Upon both full execution of this Agreement and the arbitrator's execution of the Award, UEC for itself, and on behalf of its collective and respective agents, employees, officers,

Exhibit 4
Page 2 of 8

directors, partners, owners, shareholders, members, affiliates, attorneys, insurers and representatives, together with their successors, guarantors, and assigns (collectively, "Affiliated Parties"), does hereby release and forever discharge each GRID and PACIFIC and their respective Affiliated Parties of and from any and all known and unknown actions, causes of action, claims (monetary or otherwise), suits at law or equity, debts, sums of money, payments, claw back of payments, liquidated damages, accounts, controversies, rights, liabilities, liens, mechanic's liens, demands, damages, losses, judgments, obligations, contracts, torts, agreements, promises, attorney's fees, costs, expenses, liabilities and causes of action whatsoever whether known or unknown, whether matured or unmatured, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected, whether arising now or in the future related to the alleged defects in the Olson Road Equipment, alleged delays in delivery of the Olson Road Equipment, the Olson Road Claims, the Olson Road Equipment, the Olson Road Contract, and/or the Olson Road Subcontract, including but not limited to any related claims for defense or indemnity, whether arising under contract, common law, statute or otherwise and any claims of latent defects (hereinafter the "UEC Released Claims"). Nothing in this section releases UEC's right to enforce the terms of this Agreement or the Award.

### 3.2     PACIFIC and GRID Release of Claims.

Upon both full execution of this Agreement and the arbitrator's execution of the Award, PACIFIC and GRID for themselves, and on behalf of their collective and respective agents, employees, officers, directors, partners, owners, shareholders, members, affiliates, attorneys, insurers and representatives, together with their successors, guarantors, and assigns (collectively, "Affiliated Parties"), do mutually release each other and do hereby release and forever discharge UEC and its respective Affiliated Parties of and from any and all known and unknown actions, causes of action, claims (monetary or otherwise), suits at law or equity, debts, sums of money, payments, claw back of payments, liquidated damages, accounts, controversies, rights, liabilities, liens, mechanic's liens, demands, damages, losses, judgments, obligations, contracts, torts, agreements, promises, attorney's fees, costs, expenses, liabilities and causes of action whatsoever whether known or unknown, whether matured or unmatured, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected, whether arising now or in the future related to the Olson Road Equipment, the Olson Road Subcontract and/or the Olson Road Contract that were the subject of the Olson Road Claims and/or the cross claims between GRID and PACIFIC, including but not limited to any related claims for defense or indemnity, whether arising under contract, common law, statute or otherwise (hereinafter the "PACIFIC and GRID Released Claims") (the PACIFIC and GRID Released Claims and UEC Released Claims are collectively referred to as the "Released Claims"). Nothing in this section releases PACIFIC's or GRID's right to enforce the terms of this Agreement.

### 4.     Disposition of the Olson Road Equipment.

The Parties that are currently in possession or control of any Olson Road Equipment shall be entitled take any action they see fit with respect to that equipment, including disposing of it, selling it, or otherwise.

Exhibit 4
Page 3 of 8

5.      Representations and Warranties By All Parties; No Third-Party Beneficiaries.

Each of the Parties represents and warrants that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any of the Released Claims or any of the exceptions to the Released Claims. There are no intended or incidental third-party beneficiaries to this Agreement.

6.      Attorney's Fees and Costs Related to the Released Claims.

The Parties shall each bear their own attorney's fees, expert fees, costs and any other expenses relating to or incurred in connection with the Released Claims, except as described in this Agreement.

7.      Cooperation.

The Parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to effectuate or otherwise carry out the provisions of this Agreement.

8.      Enforcement and Attorney's Fees.

Any dispute or claim that arises out of or that relates to this Agreement, or to the interpretation or breach thereof, or to the existence, validity, or scope of this Agreement, shall be resolved by Richard Skalbania as final and binding arbitrator and in accordance with the rules of the Arbitration Service of Portland, Inc., and the Parties agree to accept his decision. The Parties further and fully agree that, in the event any legal action is brought for breach of this Agreement, the prevailing party(ies) shall be entitled to its (their) reasonable attorney's fees and other costs and expenses incurred in enforcing this Agreement and any judgment based thereon.

9.      No Admission of Liability.

This Agreement does not constitute, nor shall it be construed as, an admission of liability by any Party of the truth or validity of any real or potential claims, cross-claims or defenses asserted or which could be asserted by any of the Parties.

10.      Confidentiality.

The Parties and their respective counsel agree to keep all terms of this settlement completely confidential and agree not to disclose any information concerning this Agreement, the terms of the settlement, or the settlement communications between the Parties, to any person or entity, unless such disclosure is: (a) necessary to report the settlement to their respective lawyers, tax advisors, accountants, auditors, and/or insurers; (b) lawfully required by any governmental agency; (c) otherwise required to be disclosed by law; (d) necessary in any legal proceeding to enforce any provision of this Agreement; or (e) necessary by GRID to pursue any claim for contribution or otherwise against Quality Manufacturing Group and/or Quality

Exhibit 4
Page 4 of 8

Welding and Fabrication, Inc. This provision does not prohibit the Parties from reporting the fact of this settlement.

11.    Binding on Successors and Assigns.

The terms of this Agreement and the obligations undertaken herein shall be binding upon and shall inure to the benefit of each of the Parties' successors, assigns, shareholders, directors, officers, employees, agents, sureties and the legal representatives of each of them, and all other persons, firms, corporations, associations, partnerships or other entities whenever the context so permits.

12.    Integration / No Reliance by Parties on Extraneous Statements.

This Agreement embodies and contains the entire understanding and agreement between the Parties pertaining to the matters described herein. There are no representations, warranties, promises or other statements upon which the Parties have relied, by whatever name called, express or implied, written or oral, except as expressly set forth in this Agreement. The Parties further agree that any payments, claims, or assignments referenced in the Agreement were independently evaluated and assessed by each Party and neither Party shall have any liability to the other for any valuation stated in the Agreement.  No modification of this Agreement shall be valid unless agreed to in writing and signed by each of the Parties.

13.    Independent Advice.

Each of the Parties acknowledges that it has received independent advice from its attorneys with respect to the advisability of making the settlement provided herein and with respect to the advisability of executing this Agreement and that it has voluntarily executed this Agreement after such independent investigation and consultation.

14.    Choice of Law.

This Agreement is made and entered into in the State of Oregon, and this Agreement and all rights, remedies or obligations provided for herein, shall be construed and enforced in accordance with the Laws of the State of Oregon.

15.    Authority to Enter into this Agreement.

Each Party hereto represents and warrants to all the other Parties:

A.    That it is authorized to enter into this Agreement and to agree to the covenants and other terms provided herein;

B.    The individual signing on behalf of the Party is authorized to execute this Agreement on behalf of and to bind the Party; and

Exhibit 4
Page 5 of 8

C.     That it is the sole and lawful owner of all right, title and interest in and to every claim and other matter which it purports to release or assign herein and that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, association, corporation or other entity, any right, title or interest in any such claim or other matter.

The Parties hereto, and each of them, agree to fully indemnify and hold harmless all of the other Parties hereto for any damages, costs, attorney's or expert's fees or other liabilities or expenses of any nature whatsoever which any such party may sustain or incur in consequence of any breach of the aforesaid representations or warranties.

16.     Freely Entered.

This Agreement has been carefully read and its contents are known, and it is freely and voluntarily signed by each of the Parties without any duress or undue influence on the part of or on behalf of any of them.

17.     Interpretation.

The drafting and negotiation of this Agreement has been participated in by each of the Parties and/or their counsel, and for all purposes, this Agreement was drafted jointly by the Parties.  The Parties agree that neither this Agreement nor any provision thereof shall be construed against any Party on the basis that such Party drafted or participated in the drafting of this Agreement or any provision thereof.

18.     Survival Clause - Validity.

If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, void, or unenforceable for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions, and parts of this Agreement and shall not affect the validity or enforceability of such remaining portions, provisions, or parts of this Agreement. Any such remaining portions, provisions, and parts of this Agreement shall remain in full force and effect and shall be liberally construed to effectuate the intentions of the Parties' expressed terms.

19.     Waiver.

No breach of any portion, provision, or part of this Agreement can be waived unless it is done in writing. Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or other portion, provision, or part of this Agreement.

20.     Execution in Counterparts.

This Agreement may be executed in separate counterparts, the whole of which shall constitute a binding agreement.  Signatures transmitted by electronic mail in pdf format, when received, shall be treated as original signatures for all purposes.

**Exhibit 4**
**Page 6 of 8**

21.    Captions/Headings.

The titles, captions, and headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any portion, provision, or part of this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Agreement as of the effective date above written.

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION

By: Robert Echenrode

Its: General Manager/CEO

PACIFIC STEEL STRUCTURES, LLC

By: _____

Its: _____

SOUTHLAND GRID STRUCTURES, LLC

By: _____

Its: CEO

Exhibit 4
Page 7 of 8

21.    Captions/Headings.

The titles, captions, and headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any portion, provision, or part of this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Agreement as of the effective date above written.

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION
By: _____
Its: _____

PACIFIC STEEL STRUCTURES, LLC.
By: _____
Its: VP of Sales i Operations

SOUTHLAND GRID STRUCTURES, LLC
By: _____
Its: _____

Page 7 of 7

Exhibit 4
Page 8 of 8

## <u>AMENDMENT TO CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>

This Amendment to the Confidential Settlement Agreement and Release dated September 30, 2024 ("Amendment") is entered into and effective as of April 30, 2025 between UMATILLA ELECTRIC COOPERATIVE ASSOCIATION ("UEC") and SOUTHLAND GRID STRUCTURES, LLC ("GRID"). The signatories to this Amendment are each individually referred to as a "Party" and collectively referred to as the "Parties."

### <u>RECITALS</u>

A.      UEC, GRID, and Pacific Steel Structures, LLC entered into a Confidential Settlement Agreement and Release ("Settlement Agreement") with an effective date of September 30, 2024.

B.      The Settlement Agreement required, among other things, that GRID pay UEC the collective sum of four million dollars ($4,000,000), with payments required to be made as follows: 1) $2,200,000 on or before October 20, 2024; 2) $600,000 on or before April 22, 2025; 3) $600,000 on or before October 22, 2025; and 4) $600,000 on or before April 22, 2026.

C.      GRID timely made a $2,200,000 payment to UEC on or before October 20, 2024.

D.      GRID did not make a $600,000 payment to UEC on or before April 22, 2025.

E.      On April 23, 2025 UEC provided Grant Margeson and Lee Wagner of Sokol Larkin with a notice of default in accordance with Paragraph 2.B. of the Settlement Agreement.

F.      At the request of GRID, UEC and GRID have agreed to modify the payment schedule set out in Paragraph 2.A of the Settlement Agreement and the purpose of this Amendment is to document and memorialize the modification.

G.      The agreed upon modified payment schedule incorporates interest at the annual rate of 9 percent pursuant to Paragraph 2.B. of the Settlement Agreement.

H.      Except as specifically set forth in this Amendment, GRID and UEC do not agree to modify any provision of the Settlement Agreement, and all terms of the Settlement Agreement shall remain effective and binding except the modifications to Paragraph 2.A as specifically agreed upon herein.

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

1.      <u>Incorporation of Recitals</u>.

All of the above recitals are not only recitals, but are also integral and material parts of this Amendment and are hereby fully incorporated into the body of this Amendment. GRID and UEC adopt, affirm, represent, and warrant the accuracy of the above recitals.

123394828.6 0077615-00003

**Exhibit 5**
**Page 1 of 3**

2.    Amendment to Settlement Agreement

Pursuant to Paragraph 12 of the Settlement Agreement, GRID and UEC agree to amend Paragraph 2.A of the Settlement Agreement to substitute the following new Paragraph 2.A in place of the original Paragraph 2.A.:

In full and final satisfaction, settlement, and release of the Olson Road Claims, the Parties agree that GRID will pay UEC the principal sum of four million ($4,000,000), in addition to interest which is encompassed in the payment schedule below, by wire transfer in accordance with wire instructions UEC will provide upon execution of this Agreement and confirmed in a telephone call between UEC and GRID prior to the first payment; the UEC individual authorized to confirm the wire instructions is Lisa McMeen with the telephone number (541) 314-6797. GRID agrees it paid $2,200,000 by no later than October 20, 2024, and agrees to make the following additional payments by the specified dates:

- $134,516.56 on or before May 1, 2025
- $136,900.13 on or before May 31, 2025
- $135,798.76 on or before June 30, 2025
- $134,861.77 on or before July 31, 2025
- $133,842.60 on or before August 31, 2025
- $133,333.00 on or before September 30, 2025
- $133,333.00 on or before October 31, 2025
- $135,305.62 on or before November 30, 2025
- $134,352.20 on or before December 31, 2025
- $600,000.00 on or before April 30, 2026 (collectively "Settlement Payments").

3.    No Other Amendments

With the exception of the agreed upon modification to Paragraph 2.A set forth above, the Parties do not agree to any other modifications of the Settlement Agreement, and all other terms of the Settlement Agreement shall remain in full force and effect.

4.    Authority to Enter into this Amendment

GRID and UEC represent and warrant to each other that they are authorized to enter into this Amendment and that the individual signing this Amendment on behalf of each respective Party has authority to execute this Amendment and to bind the Party on whose behalf they sign.

/ / /

/ / /

/ / /

/ / /

123394828.6 0077615-00003

**Exhibit 5**
**Page 2 of 3**

Page 3 of 3

5.      Execution in Counterparts.

This Amendment may be executed electronically and in separate counterparts, the whole of which shall constitute a binding agreement. Signatures transmitted by DocuSign or electronic mail in pdf format, when received, shall be treated as original signatures for all purposes.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Amendment as of the effective date above written.

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION

By: Robert Echenrode

Its: President/CEO

SOUTHLAND GRID STRUCTURES, LLC

By: Dale Sexton

Its: Chief Financial Officer

Page 3 of 3

123394828.6 0077615-00003

**Exhibit 5**
**Page 3 of 3**



## CABLE HUSTON LLP

JARED M. AHERN

jahern@cablehuston.com
www.cablehuston.com

May 5, 2026

**VIA EMAIL**

Grant Margeson
Sokol Larkin
4380 S. Macadam Avenue Suite 30
Portland, OR 97239
gmargeson@sokol-larkin.com

      Re:  Notice of Default of Southland Grid Structures, LLC

Dear Grant:

      As you know, my office represents Umatilla Electric Cooperative Association ("UEC"). On September 30, 2024, UEC and your client, Southland Grid Structures, LLC ("Grid"), entered into a Confidential Settlement Agreement and Release ("Settlement Agreement"). Grid defaulted on its payment obligations under the Settlement Agreement, and UEC sent it a notice of default on April 23, 2025, pursuant to paragraph 2.B of the Settlement Agreement. On April 30, 2025, UEC and Grid entered into an Amendment to the Settlement Agreement ("Amendment").[1]

      In the Amendment, Grid and UEC agreed on a revised payment schedule for the amounts that Grid owes UEC under the terms of the Settlement Agreement. In addition to other payments, the Amendment required Grid to make a payment of $600,000.00 to UEC on or before April 30, 2026. As of today, May 5, 2026, Grid has not made this payment to UEC.

      As a result of its failure to timely make this payment to UEC, Grid is in default of the Settlement Agreement and Amendment. This letter constitutes written notice to Grid of that default under paragraph 2.B. of the Settlement Agreement, and Grid has 10 business days from the date of this letter to cure its default. Settlement Agreement ¶ 2.B. If Grid fails to cure its default within that time, UEC will proceed accordingly.

/ / /

/ / /

---

[1] A copy of the Settlement Agreement and Amendment are attached to this letter for your convenience.

**Exhibit 6**
**Page 1 of 17**

Grant Margeson
May 5, 2026
Page 2

UEC reserves all rights under the Settlement Agreement, the Amendment, and Oregon law.

Very truly yours,

*/s/ Jared M. Ahern*

Jared M. Ahern

JMA:rr
Enclosure
cc:  Thomas M. Grim (*via email*)

**Exhibit 6**
**Page 2 of 17**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into and effective as of September 30, 2024 (the "Effective Date") between UMATILLA ELECTRIC COOPERATIVE ASSOCIATION ("UEC"); PACIFIC STEEL STRUCTURES, LLC ("PACIFIC"); and SOUTHLAND GRID STRUCTURES, LLC ("GRID"). The signatories to this Agreement are each individually referred to as a "Party" and collectively referred to as the "Parties."

## RECITALS

A.      UEC is the owner of a high voltage electric transmission line project in Boardman, Oregon known as the Olson Road Project.

B.      On or about February 25, 2021, UEC and PACIFIC entered into a contract for galvanized steel poles and arms for the Olson Road Project (the "Olson Road Equipment" and the "Olson Road Contract").

C.      PACIFIC retained GRID to manufacture the Olson Road Equipment for the Olson Road Project (the "Olson Road Subcontract").

D.      After delivery, UEC alleged that the Olson Road Equipment contained defects, and PACIFIC and GRID dispute whether, and to what extent, there were defects.

E.      UEC contends it was damaged as a result of the alleged defects, and GRID and PACIFIC dispute not only whether there were defects, but also UEC's damages, and PACIFIC also contends that UEC is required to pay it additional sums under the Olson Road Contract. GRID contends that PACIFIC owes it additional sums under the Olson Road Subcontract and PACIFIC contends GRID owes PACIFIC for defense and indemnity under the Olson Road Subcontract. PACIFIC and GRID each dispute the other's claims.

E.      On February 7, 2023, the Parties entered into an Arbitration Agreement, wherein they agreed to arbitrate all claims and defenses arising out of the Olson Road Equipment, Olson Road Contract and the Olson Road Subcontract (the "Olson Road Claims"). The Parties, along with H.W. Metal Products, Inc. ("H.W."), also agreed to arbitrate claims relating to a separate project referred to the "Long Walk Project" which GRID was not involved with. UEC and PACIFIC have represented that the claims with respect to the Long Walk Project were previously settled pursuant to the terms of a separate settlement agreement.

F.      The Parties desire to enter into this Agreement for the purpose of settling all of the Olson Road Claims as between UEC on the one hand, and GRID and PACIFIC on the other, as well as all the Olson Road Claims between GRID on the one hand, and PACIFIC on the other.

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

1.      Incorporation of Recitals.

Exhibit 6
Page 3 of 17

All of the above recitals are not only recitals, but are also integral and material parts of this Agreement and are hereby fully incorporated into the body of this Agreement. The Parties adopt, affirm, represent, and warrant the accuracy of the above recitals.

2.      Settlement, Consideration, and Dismissal.

A.      In full and final satisfaction, settlement, and release of the Olson Road Claims, the Parties agree that GRID will pay UEC the collective sum of four million ($4,000,000) by wire transfer in accordance with wire instructions UEC will provide upon execution of this Agreement and confirmed in a telephone call between UEC and GRID prior to the first payment; the UEC individual authorized to confirm the wire instructions is Lisa McMeen with the telephone number (541) 314-6797. GRID agrees to pay $2,200,000 by no later than October 20, 2024, and to make the following additional payments on the following dates: $600,000 on or before April 22, 2025; an additional $600,000 on or before October 22, 2025; and a final $600,000 on or before April 22, 2026 (collectively the "Settlement Payments")

B.      As consideration for UEC's agreement to enter into this agreement, GRID agrees to execute and deliver to UEC, simultaneously with the execution and delivery of this Agreement, the Stipulated Award in the form attached here as Exhibit A (the "Award"), and UEC and GRID agree that they will submit the Award to the arbitrator, Martha Hodgkinson, and that UEC and GRID will request that she execute the Award. In the event GRID fails to make any of the Settlement Payments, UEC shall provide GRID written notice of such default. Thereafter, GRID shall have ten (10) business days from the date of such notice to cure the default. Upon the happening of the default and GRID's failure to cure such default, any amounts due under the Agreement, at UEC's option, shall become immediately due and payable, and UEC may apply for judgment on the Award and revise the Award amount to the then unpaid principal balance. If a default does not occur, UEC shall not apply for judgment or execute on the Award. Commencing after a default and continuing for so long thereafter as the default shall exist, and regardless of whether or not there has been an acceleration of the payments, the unpaid principal balance shall bear interest at an annual rate of nine percent (9%).

C.      In consideration of this Agreement and the promises and releases set forth herein, the Parties agree to take appropriate action to dismiss with prejudice all the Olson Road Claims, with each party bearing its own costs and expenses, within seven (7) business days that the Agreement is last executed, provided, however, that the Parties shall not seek a dismissal until the arbitrator executes the Award.

3.      Releases – Settlement of Claims Between the Parties.

3.1     UEC Release of Claims.

Upon both full execution of this Agreement and the arbitrator's execution of the Award, UEC for itself, and on behalf of its collective and respective agents, employees, officers,

**Exhibit 6**
**Page 4 of 17**

directors, partners, owners, shareholders, members, affiliates, attorneys, insurers and representatives, together with their successors, guarantors, and assigns (collectively, "Affiliated Parties"), does hereby release and forever discharge each GRID and PACIFIC and their respective Affiliated Parties of and from any and all known and unknown actions, causes of action, claims (monetary or otherwise), suits at law or equity, debts, sums of money, payments, claw back of payments, liquidated damages, accounts, controversies, rights, liabilities, liens, mechanic's liens, demands, damages, losses, judgments, obligations, contracts, torts, agreements, promises, attorney's fees, costs, expenses, liabilities and causes of action whatsoever whether known or unknown, whether matured or unmatured, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected, whether arising now or in the future related to the alleged defects in the Olson Road Equipment, alleged delays in delivery of the Olson Road Equipment, the Olson Road Claims, the Olson Road Equipment, the Olson Road Contract, and/or the Olson Road Subcontract, including but not limited to any related claims for defense or indemnity, whether arising under contract, common law, statute or otherwise and any claims of latent defects (hereinafter the "UEC Released Claims"). Nothing in this section releases UEC's right to enforce the terms of this Agreement or the Award.

3.2    PACIFIC and GRID Release of Claims.

Upon both full execution of this Agreement and the arbitrator's execution of the Award, PACIFIC and GRID for themselves, and on behalf of their collective and respective agents, employees, officers, directors, partners, owners, shareholders, members, affiliates, attorneys, insurers and representatives, together with their successors, guarantors, and assigns (collectively, "Affiliated Parties"), do mutually release each other and do hereby release and forever discharge UEC and its respective Affiliated Parties of and from any and all known and unknown actions, causes of action, claims (monetary or otherwise), suits at law or equity, debts, sums of money, payments, claw back of payments, liquidated damages, accounts, controversies, rights, liabilities, liens, mechanic's liens, demands, damages, losses, judgments, obligations, contracts, torts, agreements, promises, attorney's fees, costs, expenses, liabilities and causes of action whatsoever whether known or unknown, whether matured or unmatured, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected, whether arising now or in the future related to the Olson Road Equipment, the Olson Road Subcontract and/or the Olson Road Contract that were the subject of the Olson Road Claims and/or the cross claims between GRID and PACIFIC, including but not limited to any related claims for defense or indemnity, whether arising under contract, common law, statute or otherwise (hereinafter the "PACIFIC and GRID Released Claims") (the PACIFIC and GRID Released Claims and UEC Released Claims are collectively referred to as the "Released Claims"). Nothing in this section releases PACIFIC's or GRID's right to enforce the terms of this Agreement.

4.    Disposition of the Olson Road Equipment.

The Parties that are currently in possession or control of any Olson Road Equipment shall be entitled take any action they see fit with respect to that equipment, including disposing of it, selling it, or otherwise.

Exhibit 6
Page 5 of 17

5.       <u>Representations and Warranties By All Parties; No Third-Party Beneficiaries</u>.

Each of the Parties represents and warrants that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any of the Released Claims or any of the exceptions to the Released Claims. There are no intended or incidental third-party beneficiaries to this Agreement.

6.       <u>Attorney's Fees and Costs Related to the Released Claims</u>.

The Parties shall each bear their own attorney's fees, expert fees, costs and any other expenses relating to or incurred in connection with the Released Claims, except as described in this Agreement.

7.       <u>Cooperation</u>.

The Parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to effectuate or otherwise carry out the provisions of this Agreement.

8.       <u>Enforcement and Attorney's Fees</u>.

Any dispute or claim that arises out of or that relates to this Agreement, or to the interpretation or breach thereof, or to the existence, validity, or scope of this Agreement, shall be resolved by Richard Skalbania as final and binding arbitrator and in accordance with the rules of the Arbitration Service of Portland, Inc., and the Parties agree to accept his decision. The Parties further and fully agree that, in the event any legal action is brought for breach of this Agreement, the prevailing party(ies) shall be entitled to its (their) reasonable attorney's fees and other costs and expenses incurred in enforcing this Agreement and any judgment based thereon.

9.       <u>No Admission of Liability</u>.

This Agreement does not constitute, nor shall it be construed as, an admission of liability by any Party of the truth or validity of any real or potential claims, cross-claims or defenses asserted or which could be asserted by any of the Parties.

10.       <u>Confidentiality</u>.

The Parties and their respective counsel agree to keep all terms of this settlement completely confidential and agree not to disclose any information concerning this Agreement, the terms of the settlement, or the settlement communications between the Parties, to any person or entity, unless such disclosure is: (a) necessary to report the settlement to their respective lawyers, tax advisors, accountants, auditors, and/or insurers; (b) lawfully required by any governmental agency; (c) otherwise required to be disclosed by law; (d) necessary in any legal proceeding to enforce any provision of this Agreement; or (e) necessary by GRID to pursue any claim for contribution or otherwise against Quality Manufacturing Group and/or Quality

**Exhibit 6**
**Page 6 of 17**

Welding and Fabrication, Inc. This provision does not prohibit the Parties from reporting the fact of this settlement.

11.     Binding on Successors and Assigns.

The terms of this Agreement and the obligations undertaken herein shall be binding upon and shall inure to the benefit of each of the Parties' successors, assigns, shareholders, directors, officers, employees, agents, sureties and the legal representatives of each of them, and all other persons, firms, corporations, associations, partnerships or other entities whenever the context so permits.

12.     Integration / No Reliance by Parties on Extraneous Statements.

This Agreement embodies and contains the entire understanding and agreement between the Parties pertaining to the matters described herein. There are no representations, warranties, promises or other statements upon which the Parties have relied, by whatever name called, express or implied, written or oral, except as expressly set forth in this Agreement. The Parties further agree that any payments, claims, or assignments referenced in the Agreement were independently evaluated and assessed by each Party and neither Party shall have any liability to the other for any valuation stated in the Agreement.  No modification of this Agreement shall be valid unless agreed to in writing and signed by each of the Parties.

13.     Independent Advice.

Each of the Parties acknowledges that it has received independent advice from its attorneys with respect to the advisability of making the settlement provided herein and with respect to the advisability of executing this Agreement and that it has voluntarily executed this Agreement after such independent investigation and consultation.

14.     Choice of Law.

This Agreement is made and entered into in the State of Oregon, and this Agreement and all rights, remedies or obligations provided for herein, shall be construed and enforced in accordance with the Laws of the State of Oregon.

15.     Authority to Enter into this Agreement.

Each Party hereto represents and warrants to all the other Parties:

A.     That it is authorized to enter into this Agreement and to agree to the covenants and other terms provided herein;

B.     The individual signing on behalf of the Party is authorized to execute this Agreement on behalf of and to bind the Party; and

Exhibit 6
Page 7 of 17

C.      That it is the sole and lawful owner of all right, title and interest in and to every claim and other matter which it purports to release or assign herein and that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, association, corporation or other entity, any right, title or interest in any such claim or other matter.

The Parties hereto, and each of them, agree to fully indemnify and hold harmless all of the other Parties hereto for any damages, costs, attorney's or expert's fees or other liabilities or expenses of any nature whatsoever which any such party may sustain or incur in consequence of any breach of the aforesaid representations or warranties.

16.      <u>Freely Entered</u>.

This Agreement has been carefully read and its contents are known, and it is freely and voluntarily signed by each of the Parties without any duress or undue influence on the part of or on behalf of any of them.

17.      <u>Interpretation</u>.

The drafting and negotiation of this Agreement has been participated in by each of the Parties and/or their counsel, and for all purposes, this Agreement was drafted jointly by the Parties.  The Parties agree that neither this Agreement nor any provision thereof shall be construed against any Party on the basis that such Party drafted or participated in the drafting of this Agreement or any provision thereof.

18.      <u>Survival Clause - Validity</u>.

If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, void, or unenforceable for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions, and parts of this Agreement and shall not affect the validity or enforceability of such remaining portions, provisions, or parts of this Agreement. Any such remaining portions, provisions, and parts of this Agreement shall remain in full force and effect and shall be liberally construed to effectuate the intentions of the Parties' expressed terms.

19.      <u>Waiver</u>.

No breach of any portion, provision, or part of this Agreement can be waived unless it is done in writing. Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or other portion, provision, or part of this Agreement.

20.      <u>Execution in Counterparts</u>.

This Agreement may be executed in separate counterparts, the whole of which shall constitute a binding agreement.  Signatures transmitted by electronic mail in pdf format, when received, shall be treated as original signatures for all purposes.

**Exhibit 6**
**Page 8 of 17**

21.    Captions/Headings.

The titles, captions, and headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any portion, provision, or part of this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Agreement as of the effective date above written.

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION
By: Robert Echenrode
Its: General Manager/CEO


PACIFIC STEEL STRUCTURES, LLC
By: _____
Its: _____


SOUTHLAND GRID STRUCTURES, LLC
By: _____
Its: _____

Page 7 of 7

**Exhibit 6**
**Page 9 of 17**

21.    Captions/Headings.

The titles, captions, and headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any portion, provision, or part of this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Agreement as of the effective date above written.

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION
By: _____
Its: _____

PACIFIC STEEL STRUCTURES, LLC
By: _____
Its: _____

SOUTHLAND GRID STRUCTURES, LLC
By: _____
Its: _____

Exhibit 6
Page 10 of 17

BEFORE THE

ARBITRATION SERVICE OF PORTLAND

| | |
|---|---|
| UMATILLA ELECTRIC COOPERATIVE, an Oregon Electric Cooperative organized under ORS Chapter 62,<br><br>             Claimant,<br><br>      v.<br><br>PACIFIC STEEL STRUCTURES, LLC, a Washington limited liability company; H.W. METAL PRODUCTS, INC., an Oregon corporation; and SOUTHLAND GRID STRUCTURES, LLC, a Louisiana limited liability company,<br><br>             Respondents. | ASP No. 230317<br><br><br>**STIPULATED ARBITRATION AWARD** |
| PACIFIC STEEL STRUCTURES, LLC, a Washington limited liability company,<br><br>             Claimant,<br><br>      v.<br><br>UMATILLA ELECTRIC COOPERATIVE, assumed business name of Umatilla Electric Cooperative Association, an Oregon cooperative,<br><br>             Respondent. | |

Exhibit 6
Page 11 of 17

THIS MATTER comes before arbitrator Martha Hodgkinson upon the stipulation of Claimant Umatilla Electric Cooperative ("UEC") on the one hand, and Respondent Southland Grid Structures, LLC ("Grid") (collectively the "Parties") on the other. It appearing that the Parties have stipulated to entry of this award, IT IS HEREBY ORDERED AS FOLLOWS:

An arbitration award is hereby entered in favor of UEC and against Grid in the amount of $4,000,000 (four million dollars).

All Parties shall bear their own costs and fees incurred to date in the arbitration proceedings.

This award shall be enforceable via judgment in a court of competent jurisdiction, and Grid stipulates and agrees not to contest any request by UEC to confirm this award as a judgment in any court of competent jurisdiction; provided, however, that such award is entered and judgment is confirmed per the terms of the parties' Confidential Settlement Agreement and Release. Any amount already paid under the Confidential Settlement Agreement and Release shall be credited against any judgment entered pursuant to this award.

Upon a default under the terms of the Confidential Settlement Agreement and Release, this award shall accrue interest at the rate of 9 percent per annum. Any judgment based on this award shall accrue interest at the rate of 9 percent per annum from the time such judgment is entered. UEC shall be entitled to its reasonable attorney's fees and costs incurred enforcing this award or any judgment on this award.

### MONEY AWARD

A.  Judgment Creditor:

Umatilla Electric Cooperative
750 West Elm Avenue
Hermiston, OR 97838

B.  Judgment Creditor's Lawyer:

Tom Grim, OSB No. 882182
Casey Nokes, OSB No. 076641
Jared M. Ahern, OSB No. 221919
tgrim@cablehuston.com
cnokes@cablehuston.com
jahern@cablehuston.com

**Exhibit 6**
**Page 12 of 17**

Cable Huston LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201-3412
Telephone: (503) 224-3092

C.    Judgment Debtor:             Southland Grid Structures, LLC
                                   13040 Foulks Ln
                                   Amite City, LA 70422
                                   TAX ID No.: 83-2879614

D.    Judgment Debtor's Lawyer:    Jan D. Sokol
                                   Grant Margeson
                                   David J. Guild II
                                   SOKOL LARKIN
                                   4380 S Macadam Avenue, Suite 530
                                   Portland OR 97239
                                   Telephone: (503) 221-0699
                                   jdsokol@sokol-larkin.com
                                   gmargeson@sokol-larkin.com
                                   dguild@sokol-larkin.com

E.    Person or Public Body Other  None
      than Judgment Creditor's
      Attorney Entitled to Any
      Portion of Judgment:

F.    Award Amount:                **$4,000,000**

G.    Prejudgment Interest:        N/A

H.    Post-judgment Interest:      9 percent per annum

I.    Costs and attorney's fees:   None


**IT IS SO ORDERED**

_____
Martha Hodgkinson
Arbitrator

**Exhibit 6**
**Page 13 of 17**

**IT IS SO STIPULATED**

DATED: October 9, 2024.

CABLE HUSTON LLP


s/Casey M. Nokes\
G. Kevin Kiely, OSB No. 833950\
gkkiely@cablehuston.com\
Thomas M. Grim, OSB No. 882182\
tgrim@cablehuston.com\
Casey M. Nokes, OSB No. 076641\
cnokes@cablehuston.com\
Jared M. Ahern, OSB No. 221919\
jahern@cablehuston.com\
Jon P. Harlan, OSB No. 214708\
jharlan@cablehuston.com\
1455 SW Broadway, Suite 1500\
Portland, Oregon 97201

*Attorneys for Claimant*\
*Umatilla Electric Cooperative*


SOKOL, LARKIN, WAGNER & STORTI LLC


s/ David J. Guild II\
Jan D. Sokol\
Grant Margeson\
David J. Guild II\
SOKOL LARKIN\
4380 S Macadam Avenue, Suite 530\
Portland OR 97239\
Telephone: (503) 221-0699\
jdsokol@sokol-larkin.com\
gmargeson@sokol-larkin.com\
dguild@sokol-larkin.com

*Attorneys for Respondent Southland Grid*\
*Structures, LLC*

**Exhibit 6**\
**Page 14 of 17**

## AMENDMENT TO CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Amendment to the Confidential Settlement Agreement and Release dated September 30, 2024 ("Amendment") is entered into and effective as of April 30, 2025 between UMATILLA ELECTRIC COOPERATIVE ASSOCIATION ("UEC") and SOUTHLAND GRID STRUCTURES, LLC ("GRID"). The signatories to this Amendment are each individually referred to as a "Party" and collectively referred to as the "Parties."

### RECITALS

A.      UEC, GRID, and Pacific Steel Structures, LLC entered into a Confidential Settlement Agreement and Release ("Settlement Agreement") with an effective date of September 30, 2024.

B.      The Settlement Agreement required, among other things, that GRID pay UEC the collective sum of four million dollars ($4,000,000), with payments required to be made as follows: 1) $2,200,000 on or before October 20, 2024; 2) $600,000 on or before April 22, 2025; 3) $600,000 on or before October 22, 2025; and 4) $600,000 on or before April 22, 2026.

C.      GRID timely made a $2,200,000 payment to UEC on or before October 20, 2024.

D.      GRID did not make a $600,000 payment to UEC on or before April 22, 2025.

E.      On April 23, 2025 UEC provided Grant Margeson and Lee Wagner of Sokol Larkin with a notice of default in accordance with Paragraph 2.B. of the Settlement Agreement.

F.      At the request of GRID, UEC and GRID have agreed to modify the payment schedule set out in Paragraph 2.A of the Settlement Agreement and the purpose of this Amendment is to document and memorialize the modification.

G.      The agreed upon modified payment schedule incorporates interest at the annual rate of 9 percent pursuant to Paragraph 2.B. of the Settlement Agreement.

H.      Except as specifically set forth in this Amendment, GRID and UEC do not agree to modify any provision of the Settlement Agreement, and all terms of the Settlement Agreement shall remain effective and binding except the modifications to Paragraph 2.A as specifically agreed upon herein.

NOW, THEREFORE, IT IS HEREBY AGREED as follows:

1.      Incorporation of Recitals.

All of the above recitals are not only recitals, but are also integral and material parts of this Amendment and are hereby fully incorporated into the body of this Amendment. GRID and UEC adopt, affirm, represent, and warrant the accuracy of the above recitals.

Page 1 of 3

123394828.6 0077615-00003

**Exhibit 6**
**Page 15 of 17**

2.      Amendment to Settlement Agreement

Pursuant to Paragraph 12 of the Settlement Agreement, GRID and UEC agree to amend Paragraph 2.A of the Settlement Agreement to substitute the following new Paragraph 2.A in place of the original Paragraph 2.A.:

In full and final satisfaction, settlement, and release of the Olson Road Claims, the Parties agree that GRID will pay UEC the principal sum of four million ($4,000,000), in addition to interest which is encompassed in the payment schedule below, by wire transfer in accordance with wire instructions UEC will provide upon execution of this Agreement and confirmed in a telephone call between UEC and GRID prior to the first payment; the UEC individual authorized to confirm the wire instructions is Lisa McMeen with the telephone number (541) 314-6797. GRID agrees it paid $2,200,000 by no later than October 20, 2024, and agrees to make the following additional payments by the specified dates:

- $134,516.56 on or before May 1, 2025
- $136,900.13 on or before May 31, 2025
- $135,798.76 on or before June 30, 2025
- $134,861.77 on or before July 31, 2025
- $133,842.60 on or before August 31, 2025
- $133,333.00 on or before September 30, 2025
- $133,333.00 on or before October 31, 2025
- $135,305.62 on or before November 30, 2025
- $134,352.20 on or before December 31, 2025
- $600,000.00 on or before April 30, 2026 (collectively "Settlement Payments").

3.      No Other Amendments

With the exception of the agreed upon modification to Paragraph 2.A set forth above, the Parties do not agree to any other modifications of the Settlement Agreement, and all other terms of the Settlement Agreement shall remain in full force and effect.

4.      Authority to Enter into this Amendment

GRID and UEC represent and warrant to each other that they are authorized to enter into this Amendment and that the individual signing this Amendment on behalf of each respective Party has authority to execute this Amendment and to bind the Party on whose behalf they sign.

/ / /

/ / /

/ / /

/ / /

Page 2 of 3

123394828.6 0077615-00003

**Exhibit 6**
**Page 16 of 17**

5.      Execution in Counterparts.

This Amendment may be executed electronically and in separate counterparts, the whole of which shall constitute a binding agreement. Signatures transmitted by DocuSign or electronic mail in pdf format, when received, shall be treated as original signatures for all purposes.

IN WITNESS WHEREOF, each of the Parties hereto duly executes this Amendment as of the effective date above written.

Signed by:

UMATILLA ELECTRIC COOPERATIVE ASSOCIATION

By: Robert Echenrode

Its: President/CEO

SOUTHLAND GRID STRUCTURES, LLC

By: Dale Sexton

Its: Chief Financial Officer

Page 3 of 3

123394828.6 0077615-00003

**Exhibit 6**
**Page 17 of 17**